1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8    RICKY NOLAN,                          )

9              Petitioner,                 )        3:09-cv-00188-RCJ-WGC
                                           )
10   vs.                                   )
                                           )        **ORDER**
11   JACK PALMER, *et al.*,                )
                                           )
12             Respondents.                )
     _____ /

13

14          This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a

15   state prisoner, is proceeding *pro se.*  The case proceeds on the amended petition filed on July 15, 2009.

16   (ECF No. 14.)  Respondents have filed an answer to the petition  (ECF No. 64), and petitioner has filed

17   a reply (ECF No. 83.)  The case is before the court for resolution on the merits.

18   **I. Preliminary Matters**

19          Before turning to the merits of the petition, the court addresses several pending motions.

20          Petitioner moves for the court to recuse from this case because it is discriminating against him

21   on the basis of his race and education level and because it has threatened him.  (ECF No. 104.)

22          Under 28 U.S.C. § 455, a judge has an affirmative duty to recuse himself "in any proceeding in

23   which his impartiality might reasonably be questioned."  *Liteky v. United States*, 510 U.S. 540, 555

24   (1994) (citation omitted).  The substantive standard for recusal under 28 U.S.C. § 455 is "whether a

25   reasonable person with knowledge of all the facts would conclude that the judge's impartiality might

26   reasonably be questioned."  *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997); *United*

1    *States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986).   The Ninth Circuit reviews the court's denial of a

2    section 455 motion for recusal for abuse of discretion.   *United States v. Chischilly*, 30 F.3d 1144,

3    1149-1150 (9th Cir.1994).

4       The alleged bias must stem from an "extrajudicial source."   *Liteky v. United States*, 510 U.S. at

5    554-56; *United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997). The Ninth Circuit has held

6    that rulings by a court during the course of a case cannot be extra-judicial conduct. *See Hasbrouck v.*

7    *Texaco, Inc.*, 830 F. 2d 1513, 1523-24 (9th Cir. 1987); *Nilsson, Robbins, Dalgarn, Berliner, Carson &*

8    *Wurst v. Louisiana Hydrolec*, 854 F. 2d 1538, 1548 (9th Cir. 1988).  However, in *Liteky*, the Supreme

9    Court recognized that, "[t]he fact that an opinion held by a judge derives from a source outside judicial

10    proceedings is not a necessary condition for 'bias or prejudice' recusal, since predispositions developed

11    during the course of a trial will sometimes (albeit rarely) suffice. *Liteky*, 510 U.S. 540, 554.  However,

12    judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky*, 510

13    U.S. at 555; *Ortiz v. Stewart*, 149 F.3d 923, 940 (9th Cir. 1998); *United States v. Bauer*, 84 F.3d 1549,

14    1560 (9th Cir.1996).  Judicial bias or prejudice formed during current or prior proceedings is sufficient

15    for recusal only when the judge's actions "display a deep-seated favoritism or antagonism that would

16    make fair judgment impossible."   *Liteky*, 510 U.S. at 555; *Chischilly*, 30 F.3d at 1149.   Thus, judicial

17    rulings may support a motion for recusal only "in the rarest of circumstances." *Liteky*, 510 U.S. at 555;

18    *Chischilly*, 30 F.3d at 1149.

19       In this case, petitioner moves for recusal based on alleged racial discrimination, education

20    discrimination, and threats.  Petitioner argues that racial discrimination has been demonstrated by this

21    court's denial of petitioner's repeated motions for appointment of counsel.  As the court has explained

22    to petitioner previously, by relying on this court's previous orders as the basis for his motion for recusal,

23    petitioner does not allege any "extrajudicial source" for the court's alleged bias. Nor does petitioner

24    demonstrate such a deep-seated antagonism on the part of the court as to make fair judgment impossible.

25    As this court has repeatedly explained to petitioner, his filings in this case demonstrate that he is capable

26    of adequately representing himself.  The court thus finds petitioner's motion for recusal to be groundless

2

1    and denies the motion.

2      Petitioner moves for reconsideration of the court's order filed August 26, 2011.  (ECF No. 105.)

3    Where a ruling has resulted in final judgment or order, a motion for reconsideration may be construed

4    either as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e), or as

5    a motion for relief from judgment pursuant to Federal Rule 60(b).  *School Dist. No. 1J Multnomah*

6    *County v. AC&S, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993), *cert. denied* 512 U.S. 1236 (1994).  Under Fed.

7    R. Civ. P. 60(b) the court may relieve a party from a final judgment or order for the following reasons:

8       (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

9       discovered evidence which by due diligence could not have been
   discovered in time to move for a new trial under Rule 59(b); (3) fraud
   (whether heretofore denominated intrinsic or extrinsic),

10      misrepresentation, or other misconduct of an adverse party; (4) the
   judgment is void; (5) the judgment has been satisfied, released, or

11      discharged, or a prior judgment upon which it is based has been reversed
   or otherwise vacated, or it is no longer equitable that the judgment should

12      have prospective application; or (6) any other reason justifying relief from
   the operation of the judgment.

13

14     Motions to reconsider are generally left to the discretion of the trial court.  *See Combs v. Nick*

15   *Garin Trucking,* 825 F.2d 437, 441 (D.C. Cir. 1987).  In order to succeed on a motion to reconsider, a

  party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior

16   decision.  *See Kern-Tulare Water Dist. v. City of Bakersfield,* 634 F. Supp. 656, 665 (E.D. Cal. 1986),

17   *aff'd in part and rev'd in part on other grounds* 828 F.2d 514 (9th Cir. 1987).  Rule 59(e) of the Federal

18   Rules of Civil Procedure provides that any "motion to alter or amend a judgment shall be filed no later

19   than 28 days after entry of the judgment."  Furthermore, a motion under Fed. R. Civ. P. 59(e) "should

20   not be granted, absent highly unusual circumstances, unless the district court is presented with newly

21   discovered evidence, committed clear error, or if there is an intervening change in the controlling law."

22   *Herbst v. Cook,* 260 F.3d 1039, 1044 (9th Cir. 2001) (quoting *McDowell v. Calderon,* 197 F.3d 1253,

23   1255 (9th Cir. 1999)).

24     Here, petitioner has failed to make an adequate showing under either Rule 60(b) or 59(e) that this

25   court's August 26, 2011 order, should be reversed.  Petitioner states that he is presenting "newly

26   discovered evidence."  However, the document attached by petitioner to his motion, labeled "Ground

2Y," is simply a claim previously dismissed by the court. (*See* ECF No. 53 at 16 (dismissing ground 54)). Thus, the court denies petitioner's motion for reconsideration.

Several of petitioner's motions (ECF Nos. 106, 109, 114, 117, 118) seek to revive previously dismissed grounds or submit evidence in support of those previously dismissed grounds. These motions are wholly frivolous construed either as motions for reconsideration or as motions to amend the petition. Accordingly, the court denies the motions.

Petitioner moves for respondents' counsel to be disqualified from this case because he has made false statements. (ECF No. 119.) Petitioner argues that counsel falsely stated that the affidavit of Michael Snyder was admitted at trial. Counsel made no such statement. Counsel argued that the Snyder affidavit was not newly-discovered evidence because the information in the affidavit was discoverable before petitioner's criminal trial. (ECF No. 115.) Counsel did not argue that the affidavit was admitted at trial. Thus, petitioner fails to provide any basis justifying the disqualification of respondents' counsel. The motion is denied.

Last, petitioner moves for a status check. (ECF No. 123.) The court denies the motion as moot because the instant order addresses all outstanding issues in this case and addresses the merits of the amended petition.

## II. Background and Procedural History

The following is a summary of the facts as described by the Nevada Supreme Court in its opinion on direct appeal:

> Appellant Ricky Nolan was charged with 24 counts of various crimes arising from interactions with two women on separate occasions. The district court granted Nolan's motion to sever the counts into two trials.
> At the first trial, Nolan was tried on multiple counts arising from his alleged sexual assault of victim Lynda Weishaar and his subsequent unauthorized use of her credit card. Trial testimony indicated that in October 2002, Weishaar and Nolan arrived separately at a local pub where they engaged in conversation. Weishaar, who had taken an antidepressant and a painkiller earlier that day, drank alcohol for several hours at that bar. Although they left the pub around the same time, they were not seen leaving together. Thereafter, Weishaar was sexually assaulted in a Las Vegas apartment complex.
> After the assault, Weishaar was found on a street near the exit of

4

the apartment complex.  The woman who found her testified Weishaar could not remember her own name.  The treating nurse at the hospital stated that Weishaar's memory was limited and "sketchy," and that Weishaar did not know what had happened to her.  The treating physician testified that Weishaar had no recollection of the events that had occurred.  Moreover, Weishaar told the investigating detective that the events of the night were like a "fuzzy dream" and everything was a "blur."

Prior to the preliminary hearing, Weishaar underwent hypnosis to assist her recall of the events.  But Weishaar testified at the preliminary hearing that she had little recollection of the sexual assault.  However, at trial, she was permitted to testify in more detail about the assault because she claimed she had some memories independent of the hypnotic session.  The district court limited Weishaar's testimony to those memories that she maintained she recalled before undergoing hypnosis.  Weishaar testified she had two clear memories of the assault before she underwent hypnosis; the first was lying on a soft mattress while having Nolan over her and forcing her to have intercourse, and the second was lying on her stomach while being sodomized by a person that had the same voice as Nolan.

The jury found Nolan guilty in the first trial of first-degree kidnapping, sexual assault, sexual assault with substantial bodily harm, robbery, burglary, unauthorized signing of a credit or debit transaction, and attempted unauthorized signing of a credit or debit transaction.

In the second trial, Nolan was tried on multiple counts arising from his alleged sexual assault of victim Cynthia Dyson at his apartment and a fight with Dyson's son after the alleged assault.  Dyson testified that in September 2002, Nolan approached her on the street and expressed an interest in her church.  Dyson offered to walk with Nolan to his home and provide him with information concerning the church.  According to Dyson, once the two arrived at Nolan's apartment, Nolan pulled Dyson inside and sexually assaulted her.

After Nolan released her, Dyson went immediately to the apartment she shared with her son and informed him about the incident.  Dyson's son located Nolan and the two individuals engaged in a fight outside Nolan's apartment.  During the altercation, Nolan repeatedly struck Dyson's son with a large rock.  Dyson's son was taken to the hospital and received treatment for a laceration to his head and a broken nose.

At the close of trial, the jury found Nolan guilty of first-degree kidnapping, sexual assault, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon with substantial bodily harm.

(Exhibits to Mot. to Dismiss Ex. 44 at 3-5.)[1]

On October 23, 2002, the State of Nevada filed a criminal complaint in the Eighth Judicial District Court for the State of Nevada ("District Court") charging petitioner, Ricky Nolan, with 18

---

[1] The exhibits referenced in this order are found in the court's record at ECF Nos. 27-30.

5

counts including the following: (1) 1 count of first-degree kidnapping and 1 count of sexual assault perpetrated on Cynthia Edens; and (2) 1 count of first- degree kidnapping; 6 counts of sexual assault with substantial bodily harm; 4 counts of burglary; 2 counts of attempted unauthorized signing of a credit card or debit card transaction document; 2 counts of unauthorized signing of a credit or debit card transaction document; and 1 count of robbery, all perpetrated on Lynda Weishaar. (*Id.* Ex. 1.)

On November 6, 2002, the state filed an amended criminal complaint which contained 24 counts and corrected the name Cynthia Edens to Cynthia Dyson. (*Id.* Ex. 2.) The 6 new counts consisted of 3 additional sexual assault charges and 1 robbery charge perpetrated upon Cynthia Dyson. (*Id.*) The amended criminal complaint also included a charge for attempted murder with use of a deadly weapon and a charge for battery with use of a deadly weapon, both perpetrated against Lawrence Dyson. (*Id.*)

On November 6, 2002, and November 7, 2002, the justice court conducted a preliminary hearing. (*Id.* Exs. 3, 4.) At the conclusion of the preliminary hearing, the justice court bound petitioner over on all charges. (*Id.* Exs. 4, 5.)

On November 19, 2002, the state filed an information containing the above 24 counts. (*Id.* Ex. 7.) On November 25, 2002, the state amended the information to add a notice of intent to seek habitual criminal punishment, petitioner entered a plea of not guilty, and trial was set for March 17, 2003. (*Id.* Exs. 8, 9.) On May 7, 2003, the court granted petitioner's motion to sever the Dyson counts (counts 1-8) from the Weishaar counts (counts 9-24), set trial for the Weishaar counts for October 20, 2003, and set trial for the Dyson counts for January 12, 2004. (*Id.* Ex. 13.)

On July 23, 2003, the state public defender filed a motion to withdraw due to conflict of interest; the court granted the motion and appointed Mr. Goodman to represent petitioner. (*Id.* Exs. 14, 15, 16, and 17.) On September 22, 2003, the court continued the trial on the Weishaar counts ("Weishaar Trial") to January 12, 2004, and the trial on the Dyson counts ("Dyson Trial") to March 15, 2004. (*Id.* Ex. 20.)

On January 12, 2004, the state filed a second amended information which corrected two dates and renumbered the Weishaar counts 1 through 16. (*Id.* Ex. 21.) The Weishaar Trial took place from

6

January 12, 2004 to January 16, 2004.  (*Id*. Exs. 22 - 26.)  The jury found petitioner guilty on 13 counts and not guilty on 3 counts.  (*Id*. Exs. 26, 27.)  On March 8, 2004, the District Court sentenced petitioner as follows: count 1 – life with the possibility of parole after 5 years; counts 4 and 6 – life without the possibility of parole and a special sentence of lifetime supervision, to run concurrently with each other but consecutively to count 1; count 3 – life with the possibility of parole after 10 years and a special sentence of lifetime supervision, to run consecutively to counts 1, 4 and 6.  The remaining sentences were ordered to run concurrently with each other and consecutively to counts 1, 4 and 6, as follows: counts 9, 11, 13, 15, and 16  –  22 to 96 months; counts 10, 12 and 14 – 12 to 36 months; and count 8 – 35 to 156 months.  (*Id*. Exs. 28, 30.)  The District Court entered its judgment of conviction on March 12, 2004.  (*Id*. Ex. 30.)

The Dyson Trial took place from March 15, 2004, to March 18, 2004.  (*Id*. Exs. 31, 35.)  The jury found petitioner guilty on 7 counts and not guilty on 1 count.  (*Id*. Ex. 35.)  On May 10, 2004, the District Court sentenced petitioner as follows: count 1 –  life with the possibility of parole after five years, to run consecutively to the Weishaar sentences; counts 2, 3, 4, and 5 –  life with the possibility of parole after 10 years, to run concurrently with each other but consecutively to count 1; count 7 – 96 to 240 months plus an equal and consecutive 96 to 240 months to run concurrently with count 8 but consecutively to counts 2, 3, 4, and 5; count 8 – 72 to 180 months to run concurrently with count 7 but consecutively to counts 2, 3, 4, and 5.  (*Id*. Exs. 37, 38.)  On June 8, 2004, the court entered its judgment of conviction.  (*Id.* Ex. 38.)

Petitioner filed direct appeals from both judgments of conviction, and the Nevada Supreme Court consolidated the two appeals.  (*Id*. Exs. 36, 38, 44.)  On April 5, 2005, the Nevada Supreme Court entered its order affirming in part, reversing in part and remanding.  The court affirmed all the convictions except the Dyson battery with use of a deadly weapon with substantial bodily harm conviction.  (*Id*. Ex. 44.)

On December 4, 2006, petitioner filed his first state post-conviction petition, which contained 76 grounds stemming from the Weishaar Trial.  (*Id*. Ex. 46.)  On March 5, 2007, petitioner filed his

1  second state post-conviction petition, which contained 61 grounds stemming from the Dyson Trial. (*Id.*

2  Ex. 50.)  On April 4, 2007, petitioner filed a supplement containing one ground, ground 62. (*Id.* Ex.

3  51.)

4      On August 13, 2007, pursuant to the Nevada Supreme Court's order on petitioner's direct appeal,

5  the state filed separate amended judgments of conviction for the Weishaar Trial and the Dyson Trial.

6  (*Id.* Exs. 57, 58.)  The amended judgment for the Dyson Trial omitted the battery with a deadly weapon

7  with substantial bodily harm conviction. (*Id.* Ex. 58.)  Although petitioner appealed from the amended

8  judgments, the Nevada Supreme Court found a jurisdictional defect. (*Id.* Ex. 66.)  The Nevada Supreme

9  Court concluded that the amended judgments did not add any additional counts, and that petitioner was

10  thus not an aggrieved party.  (*Id.*)  It therefore dismissed the appeal.  (*Id.*)

11      On August 22, 2007, petitioner filed a third post-conviction petition in which he challenged the

12  amendments of the judgments of conviction.  (*Id.* Exs. 67, 72)  The District Court denied all three of

13  petitioner's post-conviction petitions and petitioner appealed.  (*Id.* Exs. 67, 72, 74.)  On March 24, 2009,

14  the Nevada Supreme Court entered its order of affirmance and limited remand to correct the amended

15  judgment of conviction.  (*Id.* Ex. 74.)  The court concluded that petitioner was not entitled to relief, but

16  remanded the judgment in the Dyson case for correction of a clerical error.  (*Id.*)

17      This court received petitioner's original federal petition for writ of habeas corpus in this action

18  on April 10, 2009.  (ECF No. 1.)  On June 18, 2009, the court entered an order which provided, in part,

19  as follows:

20          Petitioner has also filed a habeas corpus petition in case #:09-cv-
           0218-BES-VPC that is challenging the same conviction in state criminal
21         case no. C-188025.  Although the two petitions appear to state different
           grounds for relief, they both challenge the same state convictions and
22         Nevada Supreme Court orders.  The Court will consolidate the two
           actions, will dismiss petitioner's action in 3:09-cv-0218-BES-VPC, and
23         will give the petitioner an opportunity to file an amended petition in 3:09-
           cv-0188-BES-RAM setting forth all of this grounds for habeas relief
24         challenging conviction C-188025.  The court notes that petitioner should
           not merely attach documents previously filed but should list each claim
25         for relief, and state facts to indicate clearly why he believes he is in
           custody in violation of the constitution, laws, or treaties of the United
26         States.  Petitioner must do his best to organize and state his claims, such
           that they are understandable to the court and to respondents.

1
2
3
4
5

> The Advisory Committee Notes to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts instruct that "notice pleading" is not sufficient in a habeas corpus action. The petition is expected to state *facts* that point to a real possibility of constitutional error. Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases, *citing Aubut v. State of Maine*, 431 F.2d 688, 689 (1st. Cir. 1970), *cited in Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977). In fact, a petition for writ of habeas corpus may be dismissed summarily if the allegations in it are vague or conclusory. *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

6
7
8
9
10
11
12

(ECF No. 7 at 2-3.) Petitioner filed his amended petition on July 15, 2009, containing 99 grounds for relief. (ECF No. 14.) On September 20, 2010, the court issued an order dismissing grounds 2, 5, 6, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 29, 31, 33, 34, 36, 37, 38, 39, 40, 41, 43, 45, 46, 47, 48, 49, 50, 51, 52, 53(a), 53(c), 54, 55, 57, 59, 60, 62, 64, 66, 67, 68, 70, 71, 72, 76 , 78, 79, 81, 82, 86, 94, 97, 98, and 99.[2] On November 19, 2010, respondents filed their answer to the remaining grounds in the amended petition. (ECF No. 64.) On January 12, 2011, petitioner filed his reply. (ECF No. 83.)[3]

13
14

## III.   Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the court's consideration of this habeas petition:

15
16
17

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

18
19

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

20
21

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

22
23
24
25

[2] In its September 20, 2010 order, the court stated that it was dismissing portions of grounds 29, 60, 76, 86, 97 and 99. To the extent that petitioner seeks to raise claims beyond those portions specifically dismissed in the court's prior order, the court concludes that petitioner fails to state any additional claims because his allegations are conclusory and devoid of factual support giving rise to claims under the broad constitutional principles he invokes.

26

[3] It appears that petitioner inadvertently omitted a claim enumerated as ground 77. Therefore, the court does not address a ground 77 in ruling on the merits of the petition.

1    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

2    order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

3    extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is

4    contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if

5    the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

6    or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

7    Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

8    *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)

9    and citing *Bell,* 535 U.S. at 694 (2002)).

10    A state court decision is an unreasonable application of clearly established Supreme Court

11    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

12    legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

13    of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The

14    "unreasonable application" clause requires the state court decision to be more than merely incorrect or

15    erroneous; the state court's application of clearly established federal law must be objectively

16    unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

17    In determining whether a state court decision is contrary to, or an unreasonable application of

18    federal law, this court looks to the state courts' last reasoned decision. *See Ylst v.Nunnemaker*, 501 U.S.

19    797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534

20    U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed

21    to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

22    clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

23   **IV. Discussion**

24        **A. Grounds 84, 85, 87, 89**

25    Respondents argue that grounds 84, 85, 87, and 89 are procedurally defaulted.

26    In ground 84, petitioner claims that the trial court committed judicial misconduct and abused its

1  discretion in violation of his constitutional rights when it failed to grant his motion for a mistrial.

2  Petitioner alleges that the trial court knew that the prosecutor had fabricated an internal investigation of

3  Detective Conboy because there was no proof of the investigation introduced at trial.

4      In ground 85, petitioner claims that the trial court committed judicial misconduct and abused its

5  discretion in violation of his constitutional rights when it deprived him of his right to confront witnesses

6  against him.  Petitioner alleges that the trial court interfered with his cross-examination of Detective

7  Kisner.

8      In ground 87, petitioner claims that the trial court committed judicial misconduct and abused its

9  discretion in violation of his constitutional rights when it allowed his prior statements to be read aloud

10  by Detective Kisner in front of the jury, causing petitioner to be a witness against himself.

11      In ground 89, petitioner claims that the trial court committed judicial misconduct in violation of

12  his constitutional rights because it failed to give jury instructions on every element of the offense of

13  attempted murder with use of a deadly weapon.

14          1.  Legal Standard

15      "Procedural default" refers to the situation where a petitioner in fact presented a claim to the state

16  courts but the state courts disposed of the claim on procedural grounds, instead of on the merits.  A

17  federal court will not review a claim for habeas corpus relief if the decision of the state court regarding

18  that claim rested on a state law ground that is independent of the federal question and adequate to

19  support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

20      The *Coleman* Court stated the effect of a procedural default, as follows:

21          In all cases in which a state prisoner has defaulted his federal claims in
           state court pursuant to an independent and adequate state procedural rule,
22          federal habeas review of the claims is barred unless the prisoner can
           demonstrate cause for the default and actual prejudice as a result of the
23          alleged violation of federal law, or demonstrate that failure to consider
           the claims will result in a fundamental miscarriage of justice.

24

   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

25  default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal

26  habeas cases.  *See Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).

1    To demonstrate cause for a procedural default, the petitioner must be able to "show that some

2  *objective factor external to the defense* impeded" his efforts to comply with the state procedural rule.

3  *Murray*, 477 U.S. at 488 (emphasis added).  For cause to exist, the external impediment must have

4  prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

5  Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default.

6  *Murray*, 477 U.S. at 488.   However, for ineffective assistance of counsel to satisfy the cause

7  requirement, the independent claim of ineffective assistance of counsel, itself, must first be presented

8  to the state courts.  *Murray*, 477 U.S. at 488-89.  In addition, the independent ineffective assistance of

9  counsel claim cannot serve as cause if that claim is procedurally defaulted.  *Edwards v. Carpenter*, 529

10  U.S. 446, 453 (2000).  With respect to the prejudice prong of cause and prejudice, the petitioner bears:

> the burden of showing not merely that the errors [complained of]
> constituted a possibility of prejudice, but that they worked to his actual
> and substantial disadvantage, infecting his entire [proceeding] with errors
> of constitutional dimension.

*White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170

(1982)).  If the petitioner fails to show cause, the court need not consider whether the petitioner suffered

actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530

n.3 (9th Cir. 1988).

### 2.  Discussion

Petitioner raised the claims he asserts in grounds 84, 85, 87, and 89 of his federal petition in

grounds 34, 38, 33, and 20 of  his second state post-conviction petition.  (Exhibits to Mot. to Dismiss

Ex. 50.)  In affirming the District Court's denial of petitioner's post-conviction petition on these

grounds, the Nevada Supreme Court concluded that the claims "could have been raised in appellant's

direct appeal, and appellant failed to demonstrate good cause for his failure to do so and actual prejudice.

NRS 34.810(1)(b)(1), (2)." (*Id.* Ex. 74 at 23.)  The Nevada Supreme Court explicitly relied on Nev.

Rev. Stat. § 34.810 as a procedural bar when it declined to review the claims.  (*Id.*).  The Ninth Circuit

Court of Appeals has held that, at least in non-capital cases, application of the procedural bar at issue

in this case – Nev. Rev. Stat. § 34.810 – is an independent and adequate state ground.  *Vang v. Nevada*,

12

329 F.3d 1069, 1073-75 (9th Cir. 2003); *see also Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999). Therefore, this court finds that the Nevada Supreme Court's holding that grounds 34, 38, 33, and 20 of the state post-conviction petition are procedurally barred under Nev. Rev. Stat. § 34.810(1)(b) and Nev. Rev. Stat. § 34.810(3) was an independent and adequate ground for the court's dismissal. Petitioner does not argue otherwise, and does not present any argument concerning cause and prejudice in his reply. Accordingly, the court dismisses grounds 84, 85, 87, and 89 as procedurally defaulted.

**B. Ground 1**

In ground 1, petitioner claims that the trial court violated his constitutional rights when it allowed Weishaar to testify regarding events only recalled after hypnosis without complying with the provisions of Nev. Rev. Stat. § 48.039.

Respondents argue that petitioner is not entitled to relief on this ground because although the Nevada Supreme Court found error in admitting the testimony, it concluded that the error was harmless.

On direct appeal, the Nevada Supreme Court held that the District Court's admission of Weishaar's posthypnotic testimony was error because the procedural requirements of Nev Rev. Stat. § 48.039 were not met and the testimony was unreliable. (Exhibits to Mot. to Dismiss Ex. 44 at 2.) Although the Nevada Supreme Court analyzed this issue as an error of state law, it appears that it implicitly concluded that petitioner's constitutional rights were violated because it undertook a harmless-error analysis pursuant to *Chapman v. California*, 386 U.S. 18, 24 (1967). Therefore, in addressing the merits of this claim, the court assumes without deciding that the trial court's admission of the testimony in question was constitutional error and focuses its inquiry on whether such an error was harmless.[4]

---

[4] The court notes that under the law in the Ninth Circuit, it is unclear whether petitioner's claim amounts to a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 955-957 (9th Cir. 2002) (explaining that the Ninth Circuit Court of Appeals has "specifically rejected the constitutional argument that the in-court testimony of a witness who had earlier been subject to hypnosis is unreliable as a matter of law" and that "[t]he only procedural requirement in this Circuit, however, is that a complete stenographic record of the hypnosis interview be maintained." (citations and internal quotation marks omitted)). Neither the Nevada Supreme Court, nor either party in this action, discusses whether or not a stenographic record of Weishaar's hypnosis interview was maintained. Thus, for the purposes of analysis in this order, the court assumes, but does not decide, that petitioner's constitutional rights were violated when Weishaar's posthypnotic testimony was admitted.

1          1.  Legal Standard

2          When a habeas petitioner establishes that a non-structural constitutional error occurred at trial,

3   "habeas relief is the appropriate remedy only if the constitutional violation resulted in error that was not

4   harmless." *Jackson v. Nevada*, 688 F.3d 1091 (9th Cir. 2012).   Under *Fry v. Plilier*, 551 U.S. 112

5   (2007), a court "'need not conduct an analysis under AEDPA of whether the state court's harmlessness

6   determination on direct review . . . was contrary to or an unreasonable application of clearly established

7   federal law." *Merolillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011) (citations and internal quotation

8   marks omitted).   Rather, the court applies a harmless-error test using the "substantial and injurious

9   effect" standard pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "without regard for the state

10  court's harmlessness determination." *Id*.   Relevant factors to the court's analysis of whether the

11  constitutional violation resulted in a "substantial and injurious effects" include "the importance of the

12  witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or

13  absence of evidence corroborating or contradicting the testimony of the witness on material points, the

14  extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's

15  case." *Id*.

16         2.  Discussion

17         Weishaar testified at trial that on the night she was attacked, she remembered being in what

18  seemed like an apartment, seeing someone besides her attacker in the apartment, waking up a couple of

19  times during the night, being assaulted, being raped and sodmized, and being hit.  (Exhibits to Mot. to

20  Dismiss Ex. 23 at 60.)  Weishaar testified that she did not remember much of the attack, but that she

21  recalled being on her back and having someone "slamming into [her]."  (*Id*. Ex. 23 at 61.)  Weishaar

22  testified that she remembered the face and voice of her attacker and identified petitioner as her attacker.

23  (*Id*. Ex. 23 at 67-70.)  Prior to the preliminary hearing in this case, Weishaar underwent hypnosis to

24  assist her recall of the events surrounding the attack.

25         The court concludes that the admission of Weishaar's posthypnotic testimony did not result in

26  a "substantial and injurious effect" because other evidence corroborates her testimony, defense counsel

1    vigorously cross-examined Weishaar regarding her ability to recollect the events surrounding the attack,

2    and the prosecution's case was relatively strong.

3        At trial, a nurse testified that the injuries Weishaar sustained were not consistent with consensual

4    sex but were consistent with sexual assault.  (*Id*. Ex. 23 at 147-47, 172.)  The nurse testified that

5    Weishaar sustained injuries to her face, anus, and vagina.  (*Id*. Ex. 23 at 138, 142-44, 148-49.)  A doctor

6    testified at trial that the injuries to Weishaar's face were the result of multiple blows and that they were

7    not consistent with a fall onto flat pavement.  (*Id*. Ex. 25 at 38-39.)  In his statement to Detectives Kisner

8    and Courtney, the audio recording of which was played at trial, petitioner admitted that he had left the

9    bar with Weishaar and had sex with her orally, vaginally, and anally at a friend's apartment.  (*Id*. Ex. 6,

10   Voluntary Statement of Ricky Nolan at 12, 15, 16.)  Although petitioner argued at trial that he and

11   Weishaar had consensual sex, testimony from the nurse and doctor was sufficient for the jury to conclude

12   that petitioner sexually assaulted Weishaar.

13       Furthermore, petitioner's defense counsel thoroughly cross-examined Weishaar at trial regarding

14   her memory and her ability to recall the events surrounding the night of the attack.  (*Id*. Ex. 23 at 61-65,

15   89-110.)

16       Last, the prosecution's case that petitioner had sexually assaulted Weishaar was relatively strong.

17   As discussed above, evidence beyond Weishaar's testimony indicated that she and petitioner had

18   engaged in sex and that it was not consensual sex.  Petitioner argued that another person, identified as

19   "Hamburger," had engaged in sex with Weishaar (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 12),

20   and that any injuries Weishaar sustained were inflicted by "Hamburger."  (*Id*. Ex. 25 at 236.)  However,

21   petitioner's defense, as supported by his voluntary statement played at trial, is significantly weakened

22   because many of his statements are contradicted by the testimony of other witnesses.  Petitioner stated

23   that he and Weishaar had been hugging and kissing at the bar.  (*Id*. Ex. 6, Voluntary Statement of Ricky

24   Nolan at 11.)  Two of the bartenders at the bar that night testified that they did not see petitioner and

25   Weishaar touching each other or kissing each other.  (*Id*. Ex. 24 at 26-27, 91-92.)  Petitioner stated that

26   Weishaar sustained an injury to her head because she fell off of a ledge or curb and hit her head on the

concrete. (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 13.) As discussed above, a doctor testified at trial that the injuries to Weishaar's face were the result of multiple blows and that they were not consistent with a fall onto flat pavement. (*Id.* Ex. 25 at 38-39.) Petitioner also stated that after he had sex with Weishaar, he saw blood on the bed and that Weishaar told him it was because she was having her period. (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 16-17.) At trial, a nurse testified that at the time of the attack, Weishaar was postmenopausal and had not had a period for the last three years. (*Id*. Ex. 23 at 135.) In conclusion, when viewed in light of all the evidence presented at trial, and in light of the defense presented by petitioner, the prosecution's case concerning Weishaar's sexual assault was relatively strong. Therefore, in sum, the admission of Weishaar's posthypnotic testimony did not result in "substantial and injuries effect" because other evidence corroborated her testimony, defense counsel vigorously cross-examined Weishaar regarding her ability to recollect the events surrounding the attack, and the prosecution's case overall was relatively strong. This court will deny habeas relief as to ground 1.

## C. Ground 3

In ground 3, petitioner claims that his constitutional rights were violated when the state introduced Weishaar's hearsay statements through other witnesses at trial. Petitioner alleges that the trial court erred when it allowed Detective Kisner to read prejudicial portions of his interview with Weishaar into the record.

Respondents argue that petitioner is not entitled to relief on this ground because Weishaar was available at trial for cross examination.

### 1. Legal Standard

"The Sixth Amendment guarantees a criminal defendant the right 'to be confronted with the witnesses against him.'" *United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) (quoting U.S. Const. amend. VI). However, the Confrontation Clause "'includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.'" *Id*. (quoting *United States v. Owens*, 484 U.S. 554, 558 (1988)). "[W]hen the declarant

1   appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use

2   of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 67 n.9 (2004). Simply put,

3   "[a]ll the Confrontation Clause requires is the ability to cross-examine the witness about his [or her]

4   faulty recollections." *Romo-Chavez*, 681 F.3d at 961.

5           2.  Discussion

6       In addressing whether the trial court's admission of Detective Kisner's testimony violated

7   petitioner's Sixth Amendment rights, the Nevada Supreme Court held:

8           Nolan argues that allowing a detective to read portions of a statement
    Weishaar gave violated his confrontation rights under the Sixth Amendment.

9   For a Confrontation Clause violation to occur, a witness must make a
    testimonial statement. The witness who made the testimonial statement must

10  then be unavailable at trial and the defendant must have been deprived of an
    opportunity to cross-examine that witness on that statement.  While the

11  statements Weishaar made to the detective may have been testimonial,
    Weishaar was available at trial and was subject to cross-examination by

12  Nolan. Although her memory was severely compromised, Nolan could cross-
    examine her about her lack of memory.  Thus, Nolan's Sixth Amendment

13  right to confront Weishaar was not violated.

14  (Exhibits to Mot. to Dismiss Ex. 44 at 10) (footnotes omitted).

15      As mentioned above, Weishaar testified at trial and was throughly cross-examined by petitioner's

16  counsel.  (*Id*. Ex. 23 at 61-65, 89-110.)  In conducting its analysis on this claim, the Nevada Supreme

17  Court cited to and applied the correct federal standard, *Crawford v. Washington*, 541 U.S. 36 (2004).

18  (*Id*. Ex. 44 at 10 n.8.)   The factual findings of the state court are presumed correct.  28 U.S.C. §

19  2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

20  to, or involved an unreasonable application of, clearly established federal law, as determined by the

21  United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

22  in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to

23  ground 3.

24  **D.  Ground 4**

25      In ground 4, petitioner claims that his constitutional rights were violated when the trial court

26  disallowed evidence of Weishaar's recent sexual encounter even though the state introduced testimony

17

1   that she had no interest in a consensual sexual encounter.  Petitioner alleges that the trial court violated

2   Nev. Rev. Stat. § 48.069 and that the jury was left with the impression that Weishaar was not capable

3   under any circumstances to have consented to sex on the night of the attack.

4        Respondents argue that alleged errors in the application of state laws are not cognizable in a

5   habeas corpus action.

6            1.  Legal Standard

7        State court rulings do not give rise to cognizable habeas claims unless the ruling violated

8   petitioner's due process right to a fair trial.  *Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991). "Under the

9   Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing

10  notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984).   "In short,

11  violations of state law are not cognizable on federal habeas review." *Rhoades v. Henry*, 611 F.3d 1133,

12  1142 (9th Cir. 2010).  Under "sufficiently egregious" circumstances, the misapplication of state law may

13  violate federal due process safeguards.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Lewis v. Jeffers*,

14  497 U.S. 764, 780 (1990).  Thus, federal habeas courts are "limited, at most, to determining whether the

15  state court's finding was so arbitrary or capricious as to constitute an independent due process" violation.

16  *Jeffers*, 497 U.S. at 780.

17           2.  Discussion

18        Nev. Rev. Stat. § 48.069 provides the procedure for the admission of a victim's previous sexual

19  conduct to prove the victim's consent.  On direct appeal, petitioner withdrew this argument after

20  acknowledging that he had failed to comply with Nev. Rev. Stat. § 48.069. (Exhibits to Mot. to Dismiss.

21  Ex. 43 at 5.)  Thus, this claim is unexhausted.  A federal court will not grant a state prisoner's petition

22  for habeas relief until the prisoner has exhausted his available state remedies for all claims raised.  *Rose*

23  *v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).  A petitioner must give the state courts a fair

24  opportunity to act on each of his claims before he presents those claims in a federal habeas petition.

25  *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *see also Duncan v. Henry,* 513 U.S. 364, 365 (1995).

26   Here, petitioner did not give the Nevada Supreme Court a fair opportunity to act on his claim because

1  he withdrew the claim on appeal.

2  The Ninth Circuit Court of Appeals has held that § 2254(b)(2) permits the denial of a federal

3  habeas petition on the merits, notwithstanding the petitioner's failure to exhaust, "only when it is

4  perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406

5  F.3d 614, 623-24 (9th Cir. 2005). The court concludes that ground four fails to raise a colorable federal

6  claim because petitioner concedes that he did not comply with Nev. Rev. Stat. § 48.069, and thus, the

7  trial court did not error in excluding this evidence. Without an underlying state-law error, petitioner fails

8  to raise a colorable due process claim that the error was so arbitrary or capricious as to constitute an

9  independent due process violation. Accordingly, the court denies habeas relief on ground 4.

10  **E.  Grounds 7 and 58**

11  In ground 7, petitioner claims that insufficient evidence supports his convictions from the

12  Weishaar Trial and the Dyson Trial in violation of his constitutional rights. As to the Weishaar Trial,

13  petitioner argues that insufficient evidence supports his convictions for first-degree kidnapping or the

14  multiple sexual assault convictions.

15  In ground 58, petitioner claims that insufficient evidence supports the multiple sexual assault

16  convictions at the Dyson Trial. Additionally, petitioner argues that insufficient evidence supports his

17  kidnapping conviction at the Dyson Trial because the state did not introduce evidence that Cynthia

18  Dyson was moved in a way that was more than incident to the alleged sexual assault. Petitioner also

19  argues that insufficient evidence supports his conviction at the Dyson Trial for attempted murder with

20  a deadly weapon.

21  Respondents argue that sufficient evidence existed at both trials to support petitioner's

22  convictions.

23  1.  Legal Standard

24  When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the

25  court reviews the record to determine "whether, after viewing the evidence in the light most favorable

26  to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc). The credibility of witnesses is beyond the scope of the court's review of the sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023. *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence. *Jones*, 207 F.3d at 563.

### 2. Discussion

In addressing the sufficiency of the evidence with respect to petitioner's convictions, the Nevada Supreme Court ruled:

> "The standard of review [when analyzing the sufficiency of the evidence] in a criminal case is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Additionally, "it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses."
>
> After reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Nolan's crimes against Weishaar beyond a reasonable doubt. Bartenders testified that they saw Nolan and Weishaar together the evening of the alleged crime and that the left the bar around the same time. Weishaar was found by an off-duty EMT, after she suffered extensive injuries, including a vaginal laceration, anal bruising, substantial blood loss, and facial bruising. Weishaar also explained to a detective what occurred to her that night. While at the hospital, Weishaar realized her ATM card was missing, and Nolan was found using her card to purchase several pairs of shoes. Nolan admitted to having sexual relations with Weishaar but denied sexually assaulting her. Although Nolan argued another individual assaulted Weishaar, the evidence points to Nolan. From that evidence, a jury could have found the essential elements of the crimes committed against Weishaar beyond a reasonable doubt.
>
> Likewise, after reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Nolan's crimes against Dyson and her son beyond a reasonable doubt. First, Dyson testified as to all the events that occurred with Nolan. While no physical indications of forced sexual penetration were found, the examining nurse stated trauma is not always present and Dyson's blood was found in Nolan's apartment. Second, Dyson's son engaged in an altercation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

> with Nolan after throwing rocks at his window, Dyson and her daughter testified that Nolan used a rock to hit her son in the head, and Dyson's son suffered a broken nose and head injuries requiring staples.  Viewed in the light most favorable to the prosecution, the jury could have found the essential elements of the crimes committed against Dyson and her son beyond a reasonable doubt.
>     Although conflicting testimony was given, the jury has the prerogative of weighing the credibility of the witnesses.  In this case, the jury rejected Nolan's version of events, and we will not disturb the jury's determination that the witnesses against Nolan were more credible.

(*Id*. Ex. 44 at 16-17) (footnotes omitted).

The Nevada Supreme Court cited to and applied the correct federal standard, *Jackson v. Virginia*, 433 U.S. 307 (1979), in reviewing petitioner's insufficiency of the evidence claim.  (*Id*. Ex. 44 n. 21.)

With respect to the first-degree kidnapping and sexual assault convictions from the Weishaar Trial, the court concludes that the Nevada Supreme Court's determination that sufficient evidence supports the convictions was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Nev. Rev. Stat. § 200.366 provides, in relevant part, "[a] person who subjects another person to sexual penetration . . . against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct, is guilty of sexual assault."

As mentioned above with respect to ground 1, at trial, a nurse testified that the injuries Weishaar sustained were not consistent with consensual sex but were consistent with sexual assault.  (*Id*. Ex. 23 at 147-47, 172.)  The nurse testified that Weishaar sustained injuries to her face, anus, and vagina.  (*Id*. Ex. 23 at 138, 142-44, 148-49.)  A doctor testified at trial that the injuries to Weishaar's face were the result of multiple blows and that they were not consistent with a fall onto flat pavement.  (*Id.* Ex. 25 at 38-39.)  Additionally, the doctor testified that Weishaar's blood alcohol level was .255 and that she was diagnosed with acute intoxication.  (*Id*. Ex. 25 at 33, 43-44.)  In his statement to Detectives Kisner and Courtney, petitioner admitted that he had left the bar with Weishaar and had sex with her orally,

21

vaginally, and anally at a friend's apartment.  (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 12, 15, 16.)  Petitioner also stated that when he was with Weishaar, she was drunk, and he knew that she was drunk.  (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 8, 14.)  Although petitioner argued at trial that he and Weishaar had consensual sex, testimony from the nurse and doctor in combination with petitioner's statement that he had sex with Weishaar when he knew she was drunk was sufficient for the jury to conclude that petitioner sexually assaulted Weishaar.  With respect to the conviction for sexual assault with an unknown object, count 4 of the second amended information, a nurse testified that  the 5-inch laceration to Weishaar's vagina indicated that something other than a penis penetrated the vagina.  (*Id*. Ex. 23 at 143.)  All of this evidence supports the elements of sexual assault.  *See* Nev. Rev. Stat. § 200.366.

As to the first-degree kidnapping conviction, Nev. Rev. Stat. § 200.310(1) provides, in relevant part:

> A person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person . . . for the purpose of committing sexual assault . . . is guilty of kidnapping in the first degree . . . .

Under Nevada law, "movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes."  *Mendoza v. State*, 130 P.3d 176, 180 (Nev. 2006).  "However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, i.e., robbery, extortion, battery resulting in substantial bodily harm or sexual assault, or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions . . . are proper."  *Id*.

At trial, a bartender testified that Weishaar was never interested in men when they hit on her and had never seen her in a pick-up situation.  (Exhibits to Mot. to Dismiss Ex. 24 at 23.)  The bartender testified that she had never seen Weishaar in the bar with a man or in a romantic situation.  (*Id*. Ex. 24

at 33.)  The bartender stated that Weishaar was even more rude to men when she was drunk.  (*Id*. Ex. 42 at 34.)  Moreover, the bartender stated that if she had seen Weishaar touching or kissing the defendant she would have intervened, in part, because based on what she knew about Weishaar, she "wasn't the type of person to kiss somebody . . . ." (*Id*. Ex. 24. at 27.)  Another bartender testified that he had never seen Weishaar in the bar with a man, touching a man, or kissing a man.  (*Id*. Ex. 24 at 91.)  This bartender testified that on the night of the attack, he saw Weishaar and petitioner leave the bar at approximately the same time, in single file, and not holding hands.  (*Id*. Ex. 24 at 92.)  In his statement to Detectives Kisner and Courtney, petitioner stated that he and Weishaar had gone to an apartment to have sex.  (*Id*. Ex. 6, Voluntary Statement of Ricky Nolan at 12.)  The testimony from the two bartenders raises the inference that Weishaar was not interested in men romantically and would not leave the bar with a man.  In viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner either seized, inveigled, enticed, abducted, or carried away Weishaar for the purpose of committing sexual assault because of Weishaar's observed pattern of total disinterest and stand-off nature with men.  Additionally, a rational trier of fact could have found that petitioner having moved Weishaar to an apartment, an indoor location, substantially increased the risk of harm over and above that existent with sexual assault, standing alone, because it increased that risk that other people would not see or hear the assault and come to Weishaar's aid.

    With respect to the sexual assault, kidnapping, and attempted murder with a deadly weapon convictions from the Dyson Trial, the court concludes that the Nevada Supreme Court's determination that sufficient evidence supports the convictions was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

    Nev. Rev. Stat. § 200.366 provides, in relevant part:

> A person who subjects another person to sexual penetration, or who
> forces another person to make a sexual penetration on himself or herself
> . . . against the will of the victim or under conditions in which the
> perpetrator knows or should know that the victim is mentally or

> physically incapable of resisting or understanding the nature of his or her conduct, is guilty of sexual assault.

At trial, Cynthia Dyson[5] testified that petitioner told her that they could go to his place so that she could write down information about her church.  (Exhibits to Mot. to Dismiss Ex. 32 at 171.)  Once they arrived at petitioner's apartment, Cynthia testified that petitioner pulled her into the apartment, took off all of his clothes, and told her he hadn't had sex in a while and was going to have sex with her.  (*Id.*)  Cynthia testified that petitioner took her to the bedroom, pulled her underwear aside and started licking her vagina while he masturbated.  (*Id.* Ex. 32 at 172.)  Cynthia testified that when petitioner pulled her back into the bedroom, she didn't want to be there and was trying to get out.  (*Id.* Ex. 32 at 171-72.)  Cynthia testified that petitioner inserted his penis into her vagina and anus, and afterward, told her to stick her fingers in his anus while he masturbated.  (*Id.* Ex. 32 at 173-74.)  Cynthia testified that she threw a lamp through a window so that she could jump out the window.  (*Id.* Ex. 32 at 174-75.)  All of this evidence supports the elements of sexual assault.  *See* Nev. Rev. Stat. § 200.366.

As to the first-degree kidnapping conviction, Nev. Rev. Stat. § 200.310(1) provides, in relevant part:

> A person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person . . . for the purpose of committing sexual assault . . . is guilty of kidnapping in the first degree . . . .

Again, under Nevada law, "movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes." *Mendoza v. State*, 130 P.3d 176, 180 (Nev. 2006).  "However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, i.e., robbery, extortion, battery resulting in substantial bodily harm or sexual assault, or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual

---

[5] Because Cynthia Dyson, Natalie Dyson, and Lawrence Nathaniel Dyson all testified at trial and share the same last name, the court refers to them by their first names.

1   convictions . . . are proper." *Id.*

2      At trial, Cynthia testified that petitioner told her that they could go to his place so that she could

3   write down information about her church. (*Id.* Ex. 32 at 171.) Once they arrived at petitioner's

4   apartment, Cynthia testified that petitioner pulled her into the apartment where he sexually assaulted her.

5   (*Id.*) In viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could

6   have found that petitioner inveigled Cynthia to his apartment for the purpose of committing sexual

7   assault because he feigned an interest in her church so that she would go with him to his apartment.

8   Additionally, a rational trier of fact could have found that Cynthia's movement to petitioner's apartment,

9   an indoor location, substantially increased the risk of harm over and above that existent with sexual

10  assault, standing alone, because it increased that risk that other people would not see or hear the assault

11  and come to Cynthia's aid.

12     As to the attempted murder with a deadly weapon conviction, Nev. Rev. Stat. § 193.330,

13  provides, in relevant part that "[a]n act done with the intent to commit a crime, and tending but failing

14  to accomplish it, is an attempt to commit that crime." Under Nev. Rev. Stat. § 200.010, murder "is the

15  unlawful killing of a human being . . . [w]ith malice aforethought, either express or implied." Express

16  malice is defined as the "deliberate intention unlawfully to take away the life of a fellow creature, which

17  is manifested by external circumstances capable of proof." Nev. Rev. Stat. § 200.020. Implied malice

18  exists when "when no considerable provocation appears, or when all the circumstances of the killing

19  show an abandoned and malignant heart." *Id.* Under Nev. Rev. Stat. § 193.165, a deadly weapon means

20  "[a]ny weapon, device, instrument, material or substance which, under the circumstances in which it is

21  used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm

22  or death."

23     At trial, Cynthia and Natalie testified that they saw petitioner hit Lawrence in the face two to

24  three times with a large rock. (Exhibits to Mot. to Dismiss Ex. 32 at 110, 180-81.) Natalie testified that

25  after Lawrence fell to the ground, petitioner kicked him more than 10 times. (*Id.* Ex. 32 at 111-12.) A

26  person living in an apartment nearby testified that he saw the fight between petitioner and Lawrence and

was going to call an ambulance because it was apparent that Lawrence would need one. (*Id*. Ex. 32 at 149-51.) Lawrence testified that petitioner first hit him in the back of the head with the large rock, then hit him in the head, face, and back while he tried to block the blows, and then kicked him several times. (*Id*. Ex. 33 at 97-100.) Lawrence testified that he did not have any weapons on him and that he thought he was going to die during the altercation. (*Id*. Ex. 33 at 98-99. 103.) Natalie testified that even after she and her mother tried to stop petitioner from hitting and kicking her brother, petitioner only stopped after a large, heavyset male intervened. (*Id*. Ex. 32 at 114-115.) Cynthia and Lawrence returned to Cynthia's apartment where, according to Natalie, after she arrived, she saw Lawrence laying on the floor with blood all over him and vomiting blood. (*Id*. Ex. 32 at 117.) As a result of the altercation with petitioner, Lawrence suffered several broken bones, including a broken nose, a split to the back of his head requiring 5 staples, stitches on his hand, injuries to his hip and back, and several injuries to his face. (*Id*. Ex. 33 at 102–04, 109-11.) In viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that because petitioner repeatedly and struck Lawrence in the head and face with a large rock and kicked him numerous times while he was on the ground, and continued to do so even after two people tried to stop him, he acted with an abandoned and malignant heart, and that he intended, but failed, to kill Lawrence. Additionally, a rational trier of fact could have found that the large rock was a deadly weapon because under the circumstances in which petitioner used it in striking Lawrence, it was readily capable of causing substantial bodily harm or death. The blows petitioner inflicted on Lawrence with the rock required medical attention at the hospital, including 5 staples to Lawrence's head.

In sum, sufficient evidence supports his convictions for first-degree kidnapping or the multiple sexual assault convictions at the Weishaar Trial, as well as his convictions for sexual assault, first-degree kidnapping, and attempted murder with a deadly weapon at the Dyson Trial. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based

1    on an unreasonable determination of the facts in light of the evidence presented in the state court

2    proceeding.  This court will deny habeas relief as to grounds 7 and 58.

3        **F. Grounds 8, 9, 11, 25, 28, 30, 32, 35, 42, 44, 53(b), 56, 63, 65, 69, 73, 74, 75, 80, 88, 91, 92,**

4        **93, 95, 96**

5        In grounds 8, 9, 11, 25, 28, 30, 32, 35, 42, 44, and 53(b) petitioner argues that he was denied his

6    constitutional right to the effective assistance of counsel at the Weishaar Trial.

7        In grounds 56, 63, 65, 69, 73, 74, 75, 80, 88, 91, 92, 93, 95, and 96, petitioner argues that he was

8    denied his constitutional right to the effective assistance of counsel at the Dyson Trial.

9        Respondents argue that petitioner fails to show that he is entitled to relief on any of his claims

10   of ineffective assistance of counsel.

11           1.  Legal Standard

12       Ineffective assistance of counsel claims are governed by the two-part test announced in

13   *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland,* the Supreme Court held that a petitioner

14   claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

15   errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

16   Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S.

17   362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant must

18   show that counsel's representation fell below an objective standard of reasonableness.  *Id.*  To establish

19   prejudice, the defendant must show that there is a reasonable probability that, but for counsel's

20   unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable

21   probability is "probability sufficient to undermine confidence in the outcome." *Id.*  Additionally, any

22   review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective

23   at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,*

24   466 U.S. at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might

25   be considered sound trial strategy.  *Id.*

26       Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance

27

of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401.

### 2. Ground 8

In ground 8, petitioner claims that his trial counsel was ineffective because he failed to undertake adequate pre-trial investigation with regard to material facts, witnesses, and exculpatory evidence. Petitioner alleges that his trial counsel failed to locate, question, or have DNA matched to "Hamburger." Additionally, petitioner alleges that trial counsel failed to become more familiar with Nev. Rev. Stat. § 48.039 and the extent to which Weishaar's posthypnotic testimony would be used at trial.

In addressing this claim, the Nevada Supreme Court ruled:

> Second, appellant claimed that his trial counsel was ineffective for failing to investigate Hamburger. Specifically, appellant asserted that his trial counsel should have sought to show that Hamburger was the man that Weishaar described as assaulting her and that biological evidence found on Weishaar matched Hamburger. Appellant failed to demonstrate that he would not have been convicted had his counsel investigated and introduced testimony related to Hamburger. At trial, witnesses testified that appellant followed Weishaar out of a bar several blocks from the apartment complex where the victim was later discovered injured. When questioned by police, appellant admitted that

28

1
2
3
4
5

> he had consensual sex with Weishaar. He claimed that Weishaar's head injuries resulted from falling off of a three-foot wall where she was later discovered. Further, appellant used, and attempted to use, Weishaar's credit cards at several businesses after the assault. Moreover, the biological evidence recovered from Weishaar could not be matched to anyone, including Hamburger, because the amount recovered did not contain enough genetic material to develop a DNA profile. Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 7.)

First, petitioner's claim concerning trial counsel's failure to become familiar with Nev. Rev. Stat. § 48.039 is without merit because, as discussed above with respect to ground 1, even if the admission of Weishaar's posthypnotic testimony was constitutional error, it was harmless. Thus, petitioner fails to show that he was prejudiced by trial counsel's failure to become familiar with Nev. Rev. Stat. § 48.039 because, even without the statute's procedural safeguards, admission of Weishaar's testimony did not result in a "substantial and injurious effect." Accordingly, petitioner fails to show that had counsel invoked the procedural safeguards of Nev. Rev. Stat. § 48.039 that there is a reasonably probability that the result at trial would have been different. *See White v. Johnson*, 153 F.3d 197, 208 (5th Cir. 1998) (concluding that a court's finding that constitutional error is harmless forecloses any argument that counsel's performance with respect to the error was prejudicial).

Second, as noted by the Nevada Supreme Court, at trial, the state's DNA analyst testified that the very small amount of biological material was insufficient to perform DNA testing. (*Id*. Ex. 23 at 201-02.) Under such circumstances, matching DNA recovered from the scene to Weishaar's attacker was not possible. Moreover, even assuming counsel's performance was deficient, petitioner fails to show that if "Hamburger" had been located that the result of the trial would have been different. As discussed previously, much of the evidence at trial pointed to petitioner as Weishaar's attacker.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

29

1    in light of the evidence presented in the state court proceeding.  This court denies relief on ground 8.

2            3.  Ground 9

3            In ground 9, petitioner claims that his trial counsel was ineffective because he conceded on direct

4    appeal that he had not complied with the statutory requirements of Nev. Rev. Stat. § 48.069.  Petitioner

5    alleges that the material testimony in this case was Weishaar's posthypnotic testimony and had counsel

6    complied with Nev. Rev. Stat. § 48.069, her testimony could have been impeached.

7            In addressing this claim, the Nevada Supreme Court ruled:

8                    Twenty-second, appellant claimed that his counsel was
         ineffective for failing to follow the requirements of NRS 48.069 and
9        properly introduce evidence of Weishaar's prior sexual conduct.  He
         asserted that evidence existed that Weishaar had sex three weeks before
10       the assault and this testimony would have impeached her testimony that
         she did not have sex and was not in the habit of engaging in sex and
11       would have supported his claim that the sex was consensual.  Appellant
         failed to demonstrate that he was prejudiced.  As discussed above, this
12       court concluded that there was sufficient evidence upon which to
         sustain appellant's convictions even if Weishaar's testimony was not
13       admitted at trial.  Nolan, 122 Nev. at 372-73, 132 P.3d at 570.  Thus,
         impeachment of her testimony would not have altered the outcome of
14       the trial.  Further, considering the substantial nature of Weishaar's
         injuries, appellant did not demonstrate that the evidence would have
15       raised sufficient doubt concerning whether the sex was consensual.
         Therefore, the district court did not err in denying this claim.
16
     (Exhibits to Mot. to Dismiss Ex. 74 at 17.)
17
             Petitioner's claim concerning trial counsel's failure to become familiar with Nev. Rev. Stat. §
18
     48.069 is without merit because, as discussed above with respect to ground 1, even if the admission of
19
     Weishaar's posthypnotic testimony was constitutional error, it was harmless.  Thus, petitioner fails to
20
     show that he was prejudiced by trial counsel's failure to comply with Nev. Rev. Stat. § 48.069  and
21
     impeach Weishaar's testimony under the statute.
22
             In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the
23
     correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss
24
     Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary
25
     to, or involved an unreasonable application of, clearly established federal law, as determined by the
26
     United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

                                                    30

in light of the evidence presented in the state court proceeding.  This court denies relief on ground 9.

### 4.  Ground 11

In ground 11, petitioner claims that his trial counsel was ineffective because he failed to hire an expert witness to test the remaining DNA and present his findings at trial.  Petitioner alleges that counsel should have hired an expert so that a match to the DNA could be found.

In addressing this claim, the Nevada Supreme Court ruled:

> Third, appellant claimed that his counsel was ineffective for failing to hire an expert to test the biological evidence recovered from Weishaar.  He asserts that the fact that it had not been matched to anyone confused the jury.  Appellant failed to demonstrate that his counsel was deficient of that he was prejudiced.  As noted above, the amount of biological evidence collected was too small for testing to develop a DNA profile.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 7.)

As discussed with respect to ground 8, at trial, the state's DNA analyst testified that the very small amount of biological material was insufficient to perform DNA testing.  (*Id*. Ex. 23 at 201-02.) Therefore, an independent expert would have been of no benefit to petitioner because there was not enough DNA evidence to perform a DNA analysis.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard*, Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 11.

### 5.  Ground 25

In ground 25, petitioner claims that his trial counsel was ineffective because he failed to object to Weishaar's posthypnotic identification of him.

In addressing this claim, the Nevada Supreme Court ruled:

> Seventh, appellant claimed that his trial counsel was ineffective

for failing to challenge the introduction of hypnotically induced testimony, which included the posthypnotic show-up and voice identification . . . .  Appellant failed to demonstrate that he was prejudiced.  While this court recognized that the district court erred in admitting Weishaar's posthypnotic testimony, it ultimately concluded that the error was harmless beyond a reasonable doubt.  Nolan v. State, 112 Nev. 363, 372-73, 132 P.3d 564, 570 (2006).  Appellant failed to demonstrate that had his counsel challenged the post-hypnotic testimony or sought a cautionary instruction, the outcome of the trial would have been different.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 9-10.)

As the court explained above under ground 1, even if the admission of Weishaar's posthypnotic testimony was constitutional error, including her posthypnotic show-up and voice identification, it was harmless.  Thus, petitioner fails to show that he was prejudiced by trial counsel's failure to object to Weishaar's identification testimony because admission of her testimony did not result in a "substantial and injurious effect."  Accordingly, petitioner fails to show that had counsel objected to her identification testimony, there is a reasonable probability that the result at trial would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 25.

6.  Ground 28

In ground 28, petitioner claims that his trial counsel was ineffective because he failed to object to the trial court's highly prejudicial comments or preserve the issue for appeal.  Petitioner alleges that the trial court committed misconduct when it told his counsel that it was going to overrule every objection he made.

32

In addressing this claim, the Nevada Supreme Court ruled:

> Sixteenth, appellant claimed that his counsel was ineffective for failing to object to the district court's comment that it would overrule every objection that he made.  He claimed that this demonstrated judicial bias.  Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced.  During trial, appellant objected to Dr. Meeks' testimony regarding the head trauma sustained by Weishaar.  In response, the court stated "you stipulated to his qualification. So I'm going to overrule every objection you make so sit down." This comment did not indicate bias.  The district court merely indicated that because defense counsel stipulated to Dr. Meeks' qualifications, it would not consider later objection asserting that there was a lack of foundation for his testimony.  Further, appellant failed to prove bias at the evidentiary hearing and the district court's finding is supported by substantial evidence.  Therefore, we affirm the denial of this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 13-14.)

At trial, the following exchange occurred, in relevant part:

> [PETITIONER'S COUNSEL]: Just for the record, we're willing to stipulate to the doctor's background.  I think his consultation report has been admitted as evidence as well.
>
> THE COURT: We'll allow him to testify as a medical doctor and as the treating physician for Ms. Weishaar.
>     You may proceed, counsel
> . . .
>
> [STATE'S COUNSEL]: Regarding the memory loss, is that a permanent thing with a head injury?
>
> [DR. MEEKS]: Again, there's a wide range.
>
> [PETITIONER'S COUNSEL]: Again, your Honor, I'm going to renew my objection based on the State has not laid a proper foundation that this doctor –
>
> THE COURT: [Petitioner's counsel], you stipulated to his qualification.  So I'm going overrule every objection you make so sit down.  Thank you.

(Exhibits to Mot. to Dismiss Ex. 25 at 29, 35-36.)

The court discerns no judicial misconduct in this exchange, and thus, concludes that counsel's performance in failing to object to the court's comment did not fall below an objective standard of reasonableness.

1      In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

2   correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

3   Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

4   to, or involved an unreasonable application of, clearly established federal law, as determined by the

5   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

6   in light of the evidence presented in the state court proceeding.  This court denies relief on ground 28.

7               7.  Ground 30

8      In ground 30, petitioner claims that his trial counsel was ineffective because he failed to call

9   rebuttal expert medical witnesses to challenge the findings of the state's medical witnesses.  Petitioner

10   alleges that nurse Linda Ebbert was allowed to testify with regard to collecting and gathering evidence.

11   Petitioner argues that trial counsel should have called an expert to challenge Ebbert's qualifications to

12   collect and gather evidence dealing with DNA because Ebbert is not a gynecologist and only a doctor

13   in that field is qualified to testify.

14      In addressing this claim, the Nevada Supreme Court ruled:

15               Twelfth, appellant claimed that his trial counsel was ineffective
            for failing to object to Nurse Ebbert's testimony about Weishaar's
16            injuries because she was not a doctor.  Appellant failed to demonstrate
            that his counsel was deficient or that he was prejudiced.  Nurse Ebbert
17            testified that she had received a degree in nursing, had been a nurse for
            40 years, and a sexual assault examiner for nine years.  She had also
18            received specialized training in gathering forensic evidence as part of
            a sexual assault investigation.  Further, she had been qualified as an
19            expert witness in Nevada courts approximately 40 times.  There was
            significant evidence that Nurse Ebbert possessed specialized knowledge
20            and training related to sexual assault examinations and evidence
            gathering.  Therefore the district court did not err in denying this claim.
21
22   (Exhibits to Mot. to Dismiss Ex. 74 at 12.)

23      As noted by the Nevada Supreme Court, Ebbert testified at trial as to her extensive qualifications.

24   Ebbert stated that she attended nursing school for three years, received her diploma, has been a practicing

25   nurse for 40 years, has been a sexual assault nurse examiner for nine years, and that as part of her

26   training to become a sexual assault nurse examiner, she was observed by physicians until they felt she

was capable of doing sexual assault examinations and gathering forensic evidence.  (*Id*. Ex. 23 at 129-

30.) Given Ebbert's qualifications, petitioner fails to show that had counsel called an expert to challenge her ability to collect and gather evidence that there is a reasonable probability that the result at trial would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 30.

### 8.  Ground 32

In ground 32, petitioner claims that his trial counsel was ineffective because he failed to preserve the issue for appeal that a nurse is not qualified to testify that all medical records are true and accurate.

In addressing this claim, the Nevada Supreme Court ruled:

> Eleventh, appellant claimed that his trial counsel was ineffective for failing to object to the introduction of Weishaar's medical records because Nurse Linda Ebbert's testimony was not sufficient to authenticate the records.   He claimed that Nurse Ebbert was contradicted by Dr. Derek Meeks who stated that the records were incomplete.   Moreover, Nurse Ebbert was not a gynecologist and therefore could not have testified about the accuracy of the records. Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. The district court admitted Weishaar's medical records based on the certificate of the custodian of records, not on the authentication of Nurse Ebbert.   See NRS 52.325(2).   Further, the custodian of records certified that the records submitted at trial were a "true and exact copy" of Weishaar's medical records.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 11-12.)

Petitioner's argument is wholly without merit because as the Nevada Supreme Court stated, Weishaar's medical records were not authenticated by nurse Ebbert, but rather, were authenticated by the custodian of records.  (*Id*. Ex. 23 at 137.)

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 32.

### 9.  Ground 35

In ground 35, petitioner claims that his trial counsel was ineffective because he failed to hire an expert witness concerning hypnosis who could testify about the problems associated with a person who undergoes hypnosis.

In addressing this claim, the Nevada Supreme Court ruled:

> Seventh, appellant claimed that his trial counsel was ineffective for failing to . . . hire an expert to testify about problems with hypnotic testimony . . . . Appellant failed to demonstrate that he was prejudiced. While this court recognized that the district court erred in admitting Weishaar's posthypnotic testimony, it ultimately concluded that the error was harmless beyond a reasonable doubt.  Nolan v. State, 112 Nev. 363, 372-73, 132 P.3d 564, 570 (2006).  Appellant failed to demonstrate that had his counsel challenged the post-hypnotic testimony or sought a cautionary instruction, the outcome of the trial would have been different.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 9-10.)

As the court has explained several times previously, even if the admission of Weishaar's posthypnotic testimony was constitutional error, it was harmless.  Thus, petitioner fails to show that he was prejudiced by trial counsel's failure to present an expert witness to discuss the problems with hypnotically-induced testimony because admission of Weishaar's testimony did not result in a "substantial and injurious effect."  Accordingly, petitioner fails to show that had counsel  presented an expert witness to discuss the problems with hypnotically-induced testimony, there is a reasonable probability that the result at trial would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, Strickland v. Washington, 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

1   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

2   in light of the evidence presented in the state court proceeding.  This court denies relief on ground 35.

3              10.  Ground 42

4       In ground 42, petitioner claims that his trial counsel was ineffective because he failed to object

5   to parts of the medical records that were missing.  Petitioner alleges that the missing records would have

6   shown Weishaar's preexisting medical conditions.

7       In addressing this claim, the Nevada Supreme Court ruled:

> Tenth, appellant claimed that his counsel was ineffective for
> failing to object to the introduction of Weishaar's medical records on
> the basis that they were incomplete. He further asserted that his counsel
> should have sought to introduce the victim's prior medical history and
> the testimony of her prior treating physicians. He claimed that it would
> demonstrate that Weishaar's injuries were the result of a pre-existing
> condition.  Appellant failed to demonstrate that he was prejudiced.
> Considering the severe facial trauma; significant blood loss; substantial
> laceration in her vagina; bruising around her vagina and anus; and a
> large blood clot, which contained foreign matter that was removed from
> Weishaar's vagina, appellant did not demonstrate that he would not
> have been convicted had his counsel introduced evidence of Weishaar's
> prior medical history.  Therefore the district court did not err in denying
> this claim.

15   (Exhibits to Mot. to Dismiss Ex. 74 at 11.)

16       As explained by the Nevada Supreme Court, at trial, testimony showed that Weishaar's injuries

17   were extensive and severe. (*See id*. Ex. 23 at 138, 142-44, 148-49; Ex. 25 at 38-39.)  Petitioner fails to

18   show that had counsel introduced Weishaar's prior medical records to show that she has pre-existing

19   conditions that there is a reasonable probability that the result at trial would have been different.

20       In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

21   correct federal standard*, Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

22   Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

23   to, or involved an unreasonable application of, clearly established federal law, as determined by the

24   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

25   in light of the evidence presented in the state court proceeding.  This court denies relief on ground 42.

26              11.  Ground 44

In ground 44, petitioner claims that his trial counsel was ineffective because of the cumulative errors he committed at trial.

In addressing this claim, the Nevada Supreme Court ruled:

> Twenty-seventh, appellant claimed that his counsel's errors resulted in reversible cumulative error. We conclude that because appellant's ineffective assistance of counsel claims are without merit, he failed to demonstrate any cumulative error and is therefore not entitled to relief on this basis. Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 20.)

This court discerns no individual instances of trial counsel's ineffective assistance, and thus, a claim seeking relief for counsel's cumulative errors must fail.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington*, 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court denies relief on ground 44.

### 12. Ground 53(b)

In ground 53(b), petitioner claims that his appellate counsel was ineffective because he failed to follow the district court's ruling to sever the trials and allowed petitioner's separate judgments of conviction to be consolidated on appeal, which resulted in the Nevada Supreme Court making a biased ruling.

In addressing this claim, the Nevada Supreme Court ruled:

> Appellant claimed that his appellate counsel was ineffective for permitting his direct appeals to be consolidated despite the district court's order severing the trials. Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. Considering that this court may elect to consolidate related appeals on its own motion, NRAP 3(b), appellant did not demonstrate that his appeals would not have been consolidated had his counsel not pursued consolidated appeals. Further, he did not demonstrate that the outcome of his appeals would have been altered if the appeals were considered

separately.   Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 21.)

Under Nev. R. App. P. 3 (b), "[w]hen the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the [Nevada] Supreme Court upon its own motion or upon motion of a party." Petitioner provides no cogent argument in support of his claim that the consolidation of his appeals resulted in a biased ruling from the Nevada Supreme Court.  Therefore, he fails to show that had appellate counsel kept his appeals separate, there is a reasonable probability that the outcome on appeal would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 53(b).

### 13.  Ground 56

In ground 56, petitioner claims that his trial counsel was ineffective because he failed to interview or call Detective Conboy as a witness at trial.  Petitioner alleges that Conboy could have testified as to why he decided not to charge petitioner with a crime and accepted Dyson's do not prosecute card.

In addressing this claim, the Nevada Supreme Court ruled:

> Eighth, appellant claimed that his trial counsel was ineffective for failing to object to Dyson's testimony that Detective Conboy forced her to sign a do not prosecute card, and for failing to interview or subpoena Detective Conboy to testify.  He asserted that Detective Conboy would have undermined the State's insinuation that Detective Conboy's misconduct caused Dyson to sign a no prosecute statement and state that she was not assaulted.  He further claimed that his counsel failed to object to assertions that Detective Conboy had been disciplined or to the State's statements mischaracterizing the facts of that discipline.  Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. At trial, Dyson testified that

> Detective Conboy threatened to charge her with sexual assault if she did not sign a do not prosecute card. She did not offer her statements for the truth of those statements, but merely to demonstrate the effect his statements had on her. See Wallach v. State, 106 Nev. 470, 473, 796 P.2d 224, 227 (1990) ("A statement merely offered to show that the statement was made and the listener was affected by the statement, and which is not offered to show the truth of the matter asserted, is admissible as non-hearsay."). Further, at the evidentiary hearing, the State introduced documentation of the disciplinary action against Detective Conboy for the incident involving Dyson. Thus, if Detective Conboy was called and testified truthfully, he would have confirmed the reports. Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 28-29.)

Petitioner fails to articulate what Detective Conboy would have testified to in order to sufficiently show a reasonable probability that, but for counsel's failure to call Detective Conboy, the result of the proceeding would have been different. Even assuming Detective Conboy would have testified that he requested that Cynthia Dyson sign the do not prosecute card because he did not believe her and did not believe sexual assault had occurred, other law enforcement officers testified that they believed the circumstances warranted an investigation. (*Id*. Ex. 32 at 72, 77-78; Ex. 33 at 79-80.) Therefore, petitioner fails to show that had counsel called Conboy as a witness, there is a reasonable probability that the outcome on appeal would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard*, Strickland v. Washington,* 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court denies relief on ground 56.

### 14. Ground 63

In ground 63, petitioner claims that his trial counsel was ineffective because he failed to assert a *Batson* challenge. Petitioner states that he is a black male who was convicted by an all white jury.

In addressing this claim, the Nevada Supreme Court ruled:

40

1
2
3
4
5
6
7
8
9
10

> First, appellant claimed that his counsel failed to raise a <u>Batson</u> challenge during jury selection.  <u>See Batson</u>, 476 U.S. 79.  In deciding a <u>Batson</u> objection, the trial court must engage in a three-step analysis: (1) the opponent of a peremptory challenge must make a prima facie case of racial discrimination; (2) the burden of production then shifts to the proponent of the strike to give a race neutral explanation; and (3) the trial court must then decide whether the opponent of the challenge has proven purposeful discrimination.  <u>See Kaczmarek v. State</u>, 120 Nev. 314, 332, 91 P.3d 16, 28-29 (2004) (following <u>Purkett v. Elem</u>, 514 U.S. 765, 767-78 (1995)).  Appellant alleged that he was improperly tried by all white jurors after two African-American venirepersons were dismissed. Appellant did not identify the jurors that he alleged were improperly dismissed or seek to elicit facts at the evidentiary hearing concerning who dismissed the jurors and whether the jurors were dismissed using peremptory challenges or challenged for cause.  <u>Hargrove v. State</u>, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).  Thus, appellant failed to meet his burden to demonstrate that counsel was ineffective.  Therefore, the district court did not err in denying this claim.

11  (Exhibits to Mot. to Dismiss Ex. 74 at 24.)

12  Here, as in his state court proceedings, petitioner fails to identify particular jurors that were

13  improperly dismissed or specify, when, why, or how they were dismissed during voir dire.  Without such

14  specificity, petitioner fails to show a reasonable probability that, but for counsel's failure to raise a

15  *Batson* challenge, the result of the proceeding would have been different**.**

16  In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

17  correct federal standard*, Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

18  Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

19  to, or involved an unreasonable application of, clearly established federal law, as determined by the

20  United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

21  in light of the evidence presented in the state court proceeding.  This court denies relief on ground 63.

22         <u>15.  Ground 65</u>

23  In ground 65, petitioner claims that his appellate counsel was ineffective because he failed to

24  argue on appeal that a mistrial should have been granted regarding the Detective Conboy issue.

25  In addressing this claim, the Nevada Supreme Court ruled:

26  
> Fourth, appellant claimed that his appellate counsel was ineffective for failing to argue that the district court erred in denying

1
2
3
4
5
6
7

> appellant's motion for a mistrial that was based on mention of the
> Detective Conboy investigation.  During the trial, the State asked
> Detective Kisner whether there was an investigation concerning
> Detective Conboy.  Detective Kisner answered that there was an
> investigation.  Defense counsel objected and moved for a mistrial.
> Upon the conclusion of the sidebar, the district court instructed the jury
> that it was not to be concerned with the procedure that the police
> department used in assigning cases.  Considering the collateral nature
> of the statement and the immediate instruction to the jury to disregard
> it, appellant failed to demonstrate that the district court abused its
> discretion in denying the motion.  Because appellant failed to
> demonstrate that this claim had a reasonable probability of success on
> appeal, the district court did not err in denying this claim.

8  (Exhibits to Mot. to Dismiss Ex. 74 at 33-34.)

9       As noted by the Nevada Supreme Court, at trial, after Detective Kisner testified that there was

10  an internal investigation concerning Detective Conboy, the court, out of the presence of the jury

11  discussed the matter with counsel.  (*Id*. Ex. 33 at 52-59.)  Defense counsel moved for a mistrial, and in

12  the alternative, for a cautionary instruction.  (*Id*. Ex. 54.)  The court denied the motion and noted that

13  the fact of the investigation regarding Detective Conboy had already been testified to previously by

14  Cynthia Dyson.  (*Id*. Ex. 33 at 55-56.)  In the presence of the jury, the court informed the jury that how

15  the police department assigns its cases and changes case assignments is not something for them to be

16  concerned about.  (*Id*. Ex. 33 at 59.)  "[I]mproper advocacy that places prejudicial and inadmissible

17  evidence before the jury can create an unacceptable risk of biased jury deliberations and also require

18  mistrial as a matter of 'manifest necessity.'" *Glover v. Eighth Judicial Dist. Court of Nev*., 220 P.3d 684,

19  692 (Nev. 2009) (quoting *Arizona v. Washington*, 434 U.S. 497, 514, 516 (1978)).  "'A judicial

20  determination of manifest necessity is reviewed for abuse of discretion, but the level of deference varies

21  according to the circumstances in each case.'" *Id*. (quoting *United States v. Chapman*, 524 F.3d 1073,

22  1082 (9th Cir. 2008).  In this case, petitioner fails to show that had appellate counsel raised a claim on

23  appeal concerning the district court's failure to declare a mistrial, that the Nevada Supreme Court would

24  have granted relief.  Accordingly, petitioner fails to show a reasonable probability that, but for counsel's

25  failure to raise the claim on appeal, the result of the proceeding would have been different**.**

26       In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

42

correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 65.

### 16.  Ground 69

In ground 69, petitioner claims that his trial counsel was ineffective because he failed to object and argue that the prosecutor committed misconduct when she stated to the jury that the sexual assault expert was wrong and incompetent.

In addressing this claim, the Nevada Supreme Court ruled:

> Fifteenth, appellant claimed that his counsel was ineffective for failing to object to prosecutorial misconduct.  Specifically, appellant claimed that the State committed misconduct with it argued that (1) the sexual assault expert that testified at trial was incompetent . . . .  Appellant failed to demonstrate that he was prejudiced.  As discussed above, prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt.  See King v. State, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000); Ross v. State, 106 Nev. 924, 928, 803 P.2d 1104, 1006 (1990).  Here, there was overwhelming evidence of guilt.  Dyson testified that appellant induced her to follow him to his apartment.  Once at the apartment, he forced her inside and then undressed.  He then took her to a bedroom where, against her will, he performed oral sex on her, placed his penis into her vagina and anus, and forced her to place her fingers in his anus while he masturbated.  Further, witnesses testified that when Lawrence confronted appellant, the engaged in a fight during which appellant struck Lawrence in the head with a rock multiple times and kicked him while he was on the ground.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 31-32.)

Even if the prosecutor's comments were prosecutorial misconduct, petitioner fails to show that there is a reasonably probability that, but for counsel's failure to object, the result of the proceeding would have been different in light of the evidence produced at trial supporting his guilt.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

43

to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 69.

### 17.  Ground 73

In ground 73, petitioner claims that his trial counsel was ineffective because he failed to cross-examine Byron Rowsen.  Petitioner alleges that Rowsen's testimony was hearsay.

In addressing this claim, the Nevada Supreme Court ruled:

> Ninth, appellant claimed that his counsel was ineffective for failing to cross-examine Byron Rowsen.  Specifically, he claimed that Rowsen's testimony was hearsay because his statement that there was blood on the wall of the apartment was contradicted by a forensic investigator.  Appellant failed to demonstrate that his counsel was deficient of that he was prejudiced.  Rowsen testified concerning the condition of the apartment as he observed it when he cleaned it after appellant moved.  His testimony is not hearsay.  It was not rendered hearsay merely because it was contradicted by another witness.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 29.)

At trial, Rowsen testified about the condition of the apartment based on his own observations.  (*Id*. Ex. 32 at 294-305.)  Such testimony was based on Rowsen's own personal knowledge and is not hearsay.  Thus, the basis of petitioner's claim of ineffective assistance of counsel is erroneous, and he therefore fails to show a reasonable probability that, but for counsel's failure challenge Rowen's testimony, the result of the proceeding would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 73.

### 18.  Ground 74

In ground 74, petitioner claims that his trial counsel was ineffective because he failed to file a

motion to sever the crimes of sexual assault, kidnapping, and attempted murder because the crimes were

separate instances and could have confused the jury.

In addressing this claim, the Nevada Supreme Court ruled:

> Third, appellant claimed that his counsel was ineffective for failing to file a motion to sever the crimes of sexual assault, kidnapping, and attempted murder because they were separate instances and could have confused the jury. Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. Two or more offenses may be charged in the same information if the offenses are "[b]ased on the same act of transaction" or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." NRS 173.115. Further, "[i]f . . . evidence of one charge would be cross-admissible in evidence at a separate trial on another charge, then both charges may be tried together and need not be severed." Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989). Here, the evidence at trial showed that the kidnapping of the victim was part of the same transaction that culminated in the sexual assault. Further the attempted murder of Lawrence Dyson occurred after Cynthia Dyson told her son that appellant had raped her and she showed her son where appellant lived. Thus, the crimes were so "blended with one another" that full proof by testimony of one crime could not be given without showing the others. Allan v. State, 92 Nev. 318, 321, 549 P.2d 1402, 1404 (1976). Thus, appellant failed to demonstrate that his counsel would have been able to demonstrate that the "joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." Honeycutt v. State, 118 Nev. 660, 667, 56 P.3d 362, 367 (2002) (quoting United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976)), overruled on other grounds by Carter v. State, 121 Nev. 759, 121 P.3d 592 (2005). Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 25-26) (alterations in original).

Here, petitioner alleges that the jury "could have" been confused, not that they actually were

confused. Such speculation is inadequate to allege that not severing the three charges resulted in a

constitutional violation. Petitioner therefore fails to show a reasonable probability that, but for counsel's

failure to sever the three charges, the result of the proceeding would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

correct federal standard, Strickland v. Washington, 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss

Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the

1    United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

2    in light of the evidence presented in the state court proceeding.  This court denies relief on ground 74.

3                        19.  Ground 75

4         In ground 75, petitioner claims that his appellate counsel was ineffective because he failed to

5    follow the trial court's ruling to sever the trials because he allowed the trials to be consolidated on

6    appeal.

7         In addressing this claim, the Nevada Supreme Court ruled:

8              Second, appellant claimed that his appellate counsel was
         ineffective for permitting his direct appeals to be consolidated.  He
9         claimed that his counsel failed to follow the district court's order
         severing the trials.  Appellant failed to demonstrate that his counsel was
10        deficient or that he was prejudiced.  Considering that his court may
         elect to consolidate related appeals on its own motion, NRAP 3(b),
11        appellant did not demonstrate that his appeals would not have been
         consolidated had his counsel not pursued consolidated appeals.
12        Further, he did not demonstrate that he outcome of his appeals would
         have been altered if the appeals were considered separately.  Therefore,
13        the district court did not err in denying this claim.

14   (Exhibits to Mot. to Dismiss Ex. 74 at 32-33.)

15        As discussed with regard to ground 53(b), under Nev. R. App. P. 3 (b), "[w]hen the parties have

16   filed separate timely notices of appeal, the appeals may be joined or consolidated by the [Nevada]

17   Supreme Court upon its own motion or upon motion of a party."  Petitioner provides no cogent argument

18   in support of his claim that the consolidation of his appeals resulted prejudice.  Therefore, he fails to

19   show that had appellate counsel kept his appeals separate, there is a reasonable probability that the

20   outcome on appeal would have been different.

21        In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

22   correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

23   Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

24   to, or involved an unreasonable application of, clearly established federal law, as determined by the

25   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

26   in light of the evidence presented in the state court proceeding.  This court denies relief on ground 75.

                                        46

20.  Ground 80

In ground 80, petitioner claims that his trial counsel was ineffective because he failed to object to the reasonable doubt instruction at trial.

In addressing this claim, the Nevada Supreme Court ruled:

> Tenth, appellant claimed that his counsel was ineffective for failing to object to the district court's reasonable doubt instruction. Appellant failed to demonstrate that his counsel's performance was deficient.  The district court gave Nevada's statutory reasonable doubt instruction as set forth in and mandated by NRS 175.211. This court has repeatedly held that the current statutory definition is constitutional. See, e.g., Chambers v. State, 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997); Evans v. State, 112 Nev. 1172, 1191, 926 P.2d 265, 277 (1996); Lord v. State, 107 Nev. 28, 40, 806 P.2d 548, 556 (1991).  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 29.)

Here, petitioner's claim is wholly conclusory.  He provides one sentence alleging that counsel was ineffective for failing to object to the reasonable doubt instruction, but he does not allege what aspect of the instruction was problematic, and what, if any, harm resulted from the instruction. Therefore, he fails to show that had counsel objected to the reasonable doubt instruction, there is a reasonable probability that the outcome on appeal would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground 80.

21.  Ground 88

Ground 88 is the same as ground 69, and therefore, the court denies relief for the same reasons as stated above with respect to ground 69.

22.  Ground 91

In ground 91, petitioner claims that his trial counsel was ineffective because he failed to object

47

to the empaneled jury.  Petitioner alleges that several jurors were victims of sexual abuse or had family

that were victims of sexual abuse.  Petitioner also alleges that family members of Las Vegas law

enforcement sat on the jury.

In addressing this claim, the Nevada Supreme Court ruled:

> Second, appellant claimed that his counsel was ineffective for failing to challenge several jurors because they were victims of sexual abuse, knew victims of sexual abuse, sat on prior trials concerning sexual abuse, or were law enforcement officers or related to law enforcement officers. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced. During voir dire, no juror indicated that any relationship, past experience, or job would affect his or her ability to serve as a fair and impartial juror.  Further, no juror expressed a prejudicial attitude that would have supported a challenge for cause. Thus, appellant failed to demonstrate that any objection to any juror would have been successful of have lead to a reasonable probability of a different outcome a trial.  Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 24-25.)

Petitioner fails to specify which jurors were impartial based on their past experiences or

relationships, and the record confirms that no juror expressed an inability to be fair or a prejudicial

attitude sufficient for cause. (*See id*. Ex. 31 at 15-158.)  Therefore, petitioner fails to show that had trial

counsel objected to certain members of the jury, there is a reasonable probability that the outcome at trial

would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

correct federal standard*, Strickland v. Washington,* 466 U.S. 668 (1984).  (Exhibits to Mot. to Dismiss

Ex. 74 at 5.)  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the

United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding.  This court denies relief on ground 91.

### 23.  Ground 92

In ground 92, petitioner claims that his trial counsel was ineffective because he failed to object

to the photographs Natalie Dyson took of Lawrence Dyson's injuries. Petitioner alleges that these photos

48

1   were fabricated evidence that were not taken by a crime scene analyst.

2        In addressing this claim, the Nevada Supreme Court ruled:

3            Sixth, appellant claimed that his counsel was ineffective for
         failing to object to the introduction of photographs of Lawrence's
4        injuries. He asserted that the photographs were not taken by a crime
         scene photographer and thus he had no way of knowing if they were
5        altered. Appellant failed to demonstrate that his counsel was deficient.
         A photograph may be admitted through the testimony of a witness with
6        "personal knowledge that a matter is what it is claimed to be." NRS
         52.025. Lawrence's sister testified that she took the photographs of
7        Lawrence's injuries and the photographs accurately depicted his injuries
         on the day she took the photographs. Further the photographs were
8        relevant as they depicted the extent of the injuries that the State
         contended appellant inflicted on Lawrence. See NRS 48.025(1)
9        (providing that "[a]ll relevant evidence is admissible"). Therefore, the
         district court did not err in denying this claim.

10  (Exhibits to Mot. to Dismiss Ex. 74 at 27) (alterations in original).

11       Here, the photographs were properly admitted under state law, and thus, there is no error and no

12  resulting constitutional violation.

13       In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the

14  correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss

15  Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

16  to, or involved an unreasonable application of, clearly established federal law, as determined by the

17  United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

18  in light of the evidence presented in the state court proceeding. This court denies relief on ground 92.

19       <u>24. Ground 93</u>

20       Ground 93 is the same as ground 65, and therefore, the court denies relief for the same reasons

21  as stated above with respect to ground 65.

22       <u>25. Ground 95</u>

23       In ground 95, petitioner claims that his trial counsel was ineffective because he failed to include

24  a jury instruction of a lesser included charge of a lewd act.

25       In addressing this claim, the Nevada Supreme Court ruled:

26            Thirteenth, appellant claimed that his counsel was ineffective

49

for failing to request an instruction for the lesser-included offense of open and gross lewdness. Because there was sufficient evidence to find appellant guilty of sexual assault and sexual assault with substantial bodily harm, see Nolan v. State, 122 Nev. 363, 376-77, 132 P.3d 564, 573 (2006), appellant did not show that the outcome of the proceeding would have been different had a lesser-included offense instruction been given. See Strickland v. Washington, 466 U.S. 668, 694 (1984). Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 30.)

This court concluded in its analysis of petitioner's sufficiency of the evidence claim, ground 58, that sufficient evidence supports his convictions for sexual assault at the Dyson Trial. The Nevada Supreme Court reached the same conclusion, and thus, petitioner fails to show that its determination that counsel's failure to request an instruction for the lesser-included offense of open and gross lewdness did not prejudice petitioner is objectively unreasonable under the doubly deferential standard of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court denies relief on ground 95.

26.  Ground 96

In ground 96, petitioner claims that his trial counsel was ineffective because he failed to object to the deletion of the jury instruction on direct and circumstantial evidence. Petitioner alleges that the deletion of this instruction caused the attempted murder jury instructions to be defective.

In addressing this claim, the Nevada Supreme Court ruled:

Eleventh, appellant claimed that his trial counsel was ineffective for failing to object to the district court's instructions for attempted murder with the use of a deadly weapon. Specifically, appellant contended that his attorney failed to oppose the district court's decision to remove language concerning direct and circumstantial evidence from the instruction. Appellant failed to demonstrate that he was prejudiced. Instruction 26 properly instructed the jury on the difference between

50

> direct and circumstantial evidence. Therefore, the district court did not err in denying this claim.

(Exhibits to Mot. to Dismiss Ex. 74 at 29-30.)

Here, it appears that the jury instruction concerning direct and circumstantial evidence was given at trial. (*Id*. Ex. 33 at 164.) Additionally, even if the instruction was not given, petitioner fails to specifically allege what, if any, harm resulted. Therefore, he fails to show that had counsel objected to the alleged deletion, there is a reasonable probability that the result at trial would have been different.

In conducting its analysis on this claim, the Nevada Supreme Court cited to and applied the correct federal standard, *Strickland v. Washington,* 466 U.S. 668 (1984). (Exhibits to Mot. to Dismiss Ex. 74 at 5.) Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court denies relief on ground 96.

## G. Ground 61

In ground 61, petitioner claims that he is actually innocent of sexually assaulting Cynthia Dyson because she came to his house for a drug deal and sexually assaulted him. Petitioner also alleges that he was physically assaulted by the Dysons and was defending himself when the fight with Lawrence started.

Respondents argue that petitioner fails to present any new and reliable evidence supporting his claims of actual innocence.

### 1. Legal Standard

Whether a freestanding actual innocence claim can support federal habeas relief is an open question. *District Attorney's Office For the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (whether there is a federal constitutional right to release upon proof of actual innocence "is an open question"); *see Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Assuming

51

1   that an actual innocence claim could support federal habeas relief, "the threshold showing for such an

2   assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417.

3                    2.  Discussion

4           Assuming that a freestanding actual innocence claim exists, petitioner fails to meet the

5   extraordinarily high threshold to obtain relief.  Petitioner merely presents his own side of the story with

6   respect to the incident with the Dysons.  Petitioner does not provide any evidence in support of his claim

7   or other compelling argument.  Accordingly, the court denies relief on ground 61.[6]

8   **V.  Certificate of Appealability**

9           In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

10  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th

11  Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

12  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

13  certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

14  (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court;s

15  assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484).  In

16  order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

17  debatable among jurists of reason; that a court could resolve the issues differently; or that the questions

18  are adequate to deserve encouragement to proceed further.  *Id.*  This court has considered the issues

19  raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of

20  appealability, and grants a certificate of appealability on the following issues:

21          (1) Whether the trial court's admission of Weishaar's posthypnotic testimony was constitutional

22          error (ground 1);

23          (2)  If the trial court's admission of Weishaar's posthypnotic testimony was constitutional error,

24          whether the error was harmless (ground 1); and

25

26          [6] To the extent petitioner has attempted to raise claims other than those discussed on the merits
    in this order, the court concludes that he fails to state any additional claims because his allegations are
    conclusory and devoid of factual support.

                                                    52

(3) Whether petitioner's convictions for sexual assault and first-degree kidnapping from the Weishaar Trial are supported by sufficient evidence (ground 7).

## VI. Conclusion

**IT IS THEREFORE ORDERED** that petitioner's motion for recusal (ECF No. 104), motion for reconsideration (ECF No. 105), and motions to amend and/or motions for reconsideration (ECF Nos. 106, 109, 114, 117, 118), and motion to disqualify counsel (ECF No. 119) are **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's motion for status check (ECF No. 123) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that grounds 84, 85, 87, and 89 are **DISMISSED** as procedurally defaulted.

**IT IS FURTHER ORDERED** that the amended petition for a writ of habeas corpus (ECF No. 14) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **GRANTED A CERTIFICATE OF APPEALABILITY** on the following issues:

(1)   Whether the trial court's admission of Weishaar's posthypnotic testimony was constitutional error;

(2) If the trial court's admission of Weishaar's posthypnotic testimony was constitutional error, whether the error was harmless; and

(3) Whether petitioner's convictions for sexual assault and first-degree kidnapping from the Weishaar Trial are supported by sufficient evidence.

DATED this 28th day of September, 2012.

_____
UNITED STATES DISTRICT JUDGE

53